May it please the court, Steve Sadie from the Federal Public Defender's Office representing Lowell Jackson. This case is about reasonable doubt. This is one of those extraordinary cases where the evidence, when analyzed carefully, does not support any rational finder of fact finding beyond a reasonable doubt that Mr. Jackson influenced, persuaded, or prevailed upon J.B. to engage in prostitution. This is an EBBA case? Yes, it is. And so we are reviewing it under the deferential standard. And we submitted a 28-J letter on the Smith case that it issued on the 29th of October, whether it's objectively unreasonable. And we submit that under that standard, the State had used insufficient evidence to support the verdict. The key facts here are that, and what was relied upon by the district court, were hearsay statements that Detective LaMonica stated about what the J.B. had said at the time of the arrest. He acknowledged that she basically provided the same testimony at that early stage as she did at trial, saying that he was not involved, he was not acting as a pimp, that he was not accepting any money, that he was not aware of or didn't know what she was doing in the room. Let me ask you, just as a matter of interest, how did that testimony come in? It was hearsay, of course. Of course. There was no objection. It was before Crawford, but what was the basis? Well, interestingly, this is a bench trial, and under the Oregon has the same prior inconsistent statement statute as the federal courts have, which is basically that it is hearsay if it was — it's not hearsay if it was given in a proceeding, a trial or other proceeding under oath. Of course, that's not what happened here. So it's hearsay. And there is some controversy for statements that would qualify as a prior inconsistent statement under the federal rule or the state analog about whether that can be sufficient or not. And there's controversy about that. But here we don't even have to reach that because it is just plain, old, ordinary, unreliable hearsay. But that's not the basis of the habeas claim. The basis of the habeas claim is that the state had an obligation to produce sufficient, reliable evidence to support any rational finder of fact coming to that conclusion. Well, wait a minute. Hearsay is questionable, but it's not per se unreliable. You look to the context. You look to the source. And so you can't rule — we can't look at this as if he never testified. I'm not saying that as a matter of law we are entitled to prevail. So let's look at what the totality of the circumstances are. Just to be clear, you're not saying that we can't look at or the district — the trial judge could not look at the hearsay evidence. You're saying there's some discount that needs to be applied to it. I would say an extreme discount. And especially under the circumstances of this case where we have evidence that it's a single officer, it's surrounded with inconsistent statements, it's not recorded in any way, there is not another witness present to say anything about it, and under oath at trial, the witness herself says, I didn't say those things. And remember, there were two statements upon which the district court relied, and one is key. And that is he says that she said that Jackson set up the appointment. We know from Keating, the witness, he says, I called Exotic Massage and talked to a woman. She says initially, I got a call from my cell through my friends at Exotic Massage. No reference to Jackson, nothing from Keating about Jackson, nothing from the witness. The officer says, well, I called that number and the number was disconnected. There were two numbers. That's what Keating says. He just called the wrong number and then jumped to the incorrect conclusion that, oh, it must have been Jackson who set it up. So the only evidence anywhere, and even that evidence, the- Well, the only evidence anywhere, we have a male voice who calls asking for directions to the motel. We have a male, Mr. Jackson, outside in a car in the parking lot, acting, I have to say, suspiciously. We have evidence that they've had a prior relationship, even going to California together. We have evidence that she has engaged in prostitution in the past. I mean, how stupid do we have to be before we say there's enough evidence to conclude that he was her pimp? And that is what obviously the officer concluded that, and obviously that there may be, you could say, yes. With those suspicions, I think that's probably what happened, or that's probably he was kept in the dark, thought it was a dancing appointment, thought she was 18, all of that. After all that time, he was 18? That's what the testimony is, and there's no contrary testimony on that. And she had an identity that she was using as Stacey. But we also know from the testimony that was at trial that he has known J.B. and had a relationship of some kind with her for quite a long time. It's not as though he met her yesterday and she looks 18. They've known each other for quite a while. Eight months, that's true. And the age, regardless of the age, that still doesn't say that he was aware of what she was doing or influencing and taking those affirmative steps that have to be proved. And that's where we get to the key part, beyond a reasonable doubt. You can look at this and say, I'm not stupid. This is pretty suspicious. There's something out there. It could have been this other way that he's talking about. There's a conflict. I could draw some conclusions, but that's where the Winship standard, the Jackson v. Virginia standard, becomes so important. And that is a reasonable finder of fact has to find it beyond a reasonable doubt. I think it's so interesting to look at the state's brief and the district court brief because they're saying, yes, you can draw those kinds of inferences. That's probably what happened. But just in the rubric of can you really find this beyond a reasonable doubt what happened when the evidence that's testified to on the stand under oath contradicts the state's case and the only thing that comes in is two statements that are denied under oath as prior statements that are hearsay. But, of course, we all know that in circumstances like this, it sometimes happens that a person in the situation of J.B. will lie. Yes. That's true. And there's situations where they're telling the truth and can't believe that nobody's listening to them when they're telling the truth, which the statement about who set this up, it's obvious. Keating called exotic massage just as he had done ten times previously. There's nothing concrete to contradict that, easily verifiable that the government wanted to try to show, oh, that the line was disconnected. They never did that. Are you asking us to say, to conclude, that it's not been proved beyond a reasonable doubt that she was engaged in prostitution? I think that his knowledge No, I understand that the knowledge is a separate question. No, he testified that she was engaged in prostitution. She testified that when they were looking for the place that he was the one who called. Those are facts that are not inculpatory. Those go with both theories. Well, she claims, though, that she really went there to dance and then the prostitution came later. Yes, they were originally going to dance and that they made a subsequent deal. And that's what Keating said. Keating said, I went there, one person had danced, and I think the quote is, I was hoping for more. So if he's hoping for more and doesn't know, how are we attributing knowledge to Mr. Jackson, who the testimony is was there acting as a friend, bringing her there, but not aware of or encouraging anything in the way of prostitution? And if I could reserve the remaining time. Thank you very much. Thank you. Let me please the Court and counsel Jeremy Rice on behalf of the State. Petitioner's first claim is a Jackson v. Virginia claim. The standard with such a claim is whether any rational person could have found the defendant guilty beyond a reasonable doubt. If no rational person could have found the defendant guilty, then relief may be granted. Our position, as is outlined in the brief, is that the evidence in this case is sufficient to support that verdict, that in this case, which was a trial to the bench, the Court made various inferences based on all the circumstances, made credibility findings, not explicit, but credibility conclusions, I should say, determined who was telling the truth and who was not, and that a rational person, given the facts presented at trial, could have reached that conclusion. I did want to take a second and respond to Judge Jones' question earlier about where this evidence comes from or on what basis it was admitted. I should say the hearsay that counsel has referred to, I don't believe there was ever an objection to that testimony, and so I'm not sure what theory the State used to admit it. I will point out that at page 8 of my brief, I cited McDaniel v. Brown, which is a 2010 case from the United States Supreme Court, telling us a little bit about Jackson v. Virginia claims, that in such a claim the Court considers all of the evidence that was presented to the fact finder, even if erroneously admitted. I think that's particularly true when something was admitted without objection. That is, this is evidence that was presented to the fact finder. It's never been questioned whether it was legitimate evidence for the fact finder to consider. Well, before Crawford, it might have been admissions against penal interest. It may very well have been. If that's an Oregon exception. Yeah, and Oregon actually still uses the Ohio v. Roberts standard as far as the Oregon Constitution is concerned, so oftentimes confrontation clause issues are raised under the Ohio v. Roberts standard in Oregon courts still. I had some recollection on other parts of the evidence there. The reference to boo or something like that, that was featured, I think, in the evidence. And there was also her demeanor in court, some reference to that. Can you amplify on those? There was evidence from the police officer that the victim, J.B. in this case, told the officers in a previous encounter, she had told the officers that she learned the prostitution trade from someone named Boo. Or Boo-Boo. Or Boo-Boo. I think it was Boo-Boo who she said she learned the prostitution trade from at trial. Why is Boo-Boo in her little book? And then in her book, it has this. Is it Boo or Boo-Boo in the book? No, it's Boo in the book and it's Boo-Boo. It's one in one place and the other in the other place. So I believe in her statement, in her prior statement, it was that she learned the trade from Boo-Boo and then in her statement. Maybe. I think Judge Fletcher is right. It's Boo-Boo in the book and it's Boo. Easy to get the two. Anyway, it was a Boo-Boo. Either way, it was a Boo-Boo. It was probably a mistake to say it in open court. And there was evidence that when that came out, she looked at the defendant and the recipient. That's actually in the record. There's an indication in the record during closing arguments, the prosecutor points it out to the court and says, again, trial to the bench. The prosecutor says, now, I confronted her about this phone number. He says, I pointed out to her that defendant's phone number is next to the name Boo or Boo-Boo or whichever it was in the book. And he says to the court, you saw her face and you saw his face when that happened. He says, you saw her look nervous and you saw him suggest with his eyes, essentially, what were you thinking putting my nickname in your book? And there's no objection to that? There's no objection to that during closing argument. I think it's a legitimate consideration for a fact finder who's watching the witnesses, watching the defendant in open court. Whether that actually happened, the only evidence of it, obviously we don't have a video, but the evidence of it is closing argument, the prosecutor's statement during closing argument. And, again, no objection to that. I think it's a legitimate thing for a fact finder to consider when it's coming forward. So page 9 of my brief and on to 10 and 11, I believe, I've outlined the evidence that I think supports the fact finder's conclusion in this case, including the reference to Boo, including the hearsay statements that Mr. Keating had contacted the defendant to make the contact. It's not a question of whether that necessarily is what happened. It's a question of whether a rational person could have concluded that that's what happened. And our position, of course, is that a rational person could and that a rational person, in this case, the trial court, did make that finding. If the court has further questions about that claim, I'm happy to attempt to address them otherwise. On defendant's second claim as an inadequate assistance of counsel claim, that claim was raised through the state post-conviction procedure, and the state post-conviction court rejected it on a Strickland prong to analysis essentially and concluded that ultimately any error or any inadequacy on the part of defendant's counsel was not prejudicial to his defense, would not have altered the outcome. If the court has specific questions about that claim, I'm happy to try to address them. Otherwise, I believe that's all I have. Thank you. Okay. Thank you. Response? I think it's so interesting. We just heard exactly what I commented on in my opening remarks, which is that, yes, a rational person could conclude from that evidence, but you couldn't conclude beyond a reasonable doubt if that term has any meaning in the real world. The ---- Is under EBPUD, do we look at this as if we were sitting as the trial judge in the case and therefore we apply that claim as if we are deciding, well, I see all this evidence and we would acknowledge that in our view de novo reviewing it, assuming we did that. You're doing it. It would not be beyond a reasonable doubt. Or does the EBPUD filter put any intermediate and therefore more stricter constraint on us? The stricter constraint, the additional filter, is whether it's objectively unreasonable. But the standard is beyond a reasonable doubt. I understand that's the standard that the state had to meet in order to convict. But the question is whether or not we, then, looking at that, have to decide when we say is it objectively reasonable or unreasonable for the trial court, hearing it as the finder of fact, to have come to those conclusions. To conclude that a rational finder of fact could find it beyond a reasonable doubt. Yes. And that's why it's so important that EBPUD doesn't tear up the Fifth Amendment and the Winship reasonable doubt standard. Right. It says is it objectively unreasonable. And that's why it is so important that when you're coming at this for the first time, looking at it, it is a de novo review. And you're looking at it saying here's hearsay. The only sworn testimony is denying guilt. Is it objectively unreasonable to find that that evidence supported a verdict beyond a reasonable doubt? And that's why the reference to McDaniel is irrelevant. In McDaniel, this Court considered evidence that came in 11 years later. And, of course, what we're looking at is the evidence. But the trial judge, trier of fact here, did, as opposing counsel pointed out, have the opportunity to view the parties and judge their credibility. Doesn't that make a difference? He saw her testify and, presumably, the defendant's reaction when she admitted her boo-boo. It's complete speculation about what somebody's reaction sitting in a chair is. I think that that is absolutely practically the definition of speculation. Wait, wait, wait. No, no. It's not. It's not. We're looking at a record which was made in the trial court. It was not objected to. It was called out. It was a description. And we can't just ignore that. It's not speculation. It may be speculation on the part of the prosecutor. But it was called out. There was a reaction. Yeah. Okay. A reaction. At least it's pointed out during the course of the proceeding. And nobody objected to it. I don't think that a reaction. I have trouble saying that that's speculation. In other words, it would be one thing for us to sit here and the State could make the argument, well, you know, given the relationship, one might assume blah, blah, blah. But this is called out during closing argument. I think that's a little reach to say that that's speculation. I would say that it has minimal probative value in the context. Let me just tell you, I understand your argument. It's a perfectly legitimate argument. But when we say objectively unreasonable, there are factors like the boo in the phone book. There are hooks under which one can conclude that this ambiguous situation, as you're putting it, tips toward beyond a reasonable doubt because when it's all taken together, including demeanor, objectively it's hard to say that the trial judge could not conclude beyond a reasonable doubt that he was involved in being her pimp in effect. I would suggest that part of this is a look at what the burdens are when the person is testifying and says he is not the person. We have testimony who that person was who was her pimp, H.L. Watt or whoever that person was. She identified as the person who taught her the trade. To have to come in and say, well, have you been able to prove that you're not boo-boo, that's putting the burden on him. And that's not how, that's why I'm so trying to focus on what the State's burden was as far as beyond a reasonable doubt. Yes, there were things he reacted. You can take that because that's in the record. But in terms of what you draw from it, I think it's right that the prosecutor was speculating about what that means. And does that bring the otherwise exculpatory evidence into a situation where it's proving the State carrying their burden or proving beyond a reasonable doubt? If that was such an important fact, give us some evidence. Put on some testimony. That's not what we saw. We basically saw hearsay evidence and the same reason for the hearsay evidence was what the post-conviction court looked at on the second issue also, in order to find that there was no prejudice from the failure of counsel to object. Okay. Thank you. Thank you very much. Thank both sides for your helpful arguments. Jackson v. Hill now submitted for decision the next case on the argument calendar this morning, Boggs v. Sowell.
judges: Jones, Fletcher W. , Fisher